IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LARRY McKELVEY,**

    **Plaintiff,**

v.                                                No. CIV 00-1241 JP/WWD-ACE

**UNUM LIFE INSURANCE COMPANY
OF NORTH AMERICA and
PRESBYTERIAN HEALTHCARE
SERVICES,**

    **Defendants**.

## MEMORANDUM OPINION AND ORDER

On December 11, 2000 Defendant UNUM Life Insurance Company of North America ("UNUM") filed a motion to dismiss or, in the alternative, for summary judgment. (Doc. No. 20). On February 1, 2001 Defendant Presbyterian Healthcare Services ("PHS") filed a motion to dismiss or, in the alternative, for summary judgment. (Doc. No. 23). Both motions will be granted.

**I.  Background**

Plaintiff alleges that while employed with Defendant PHS he purchased disability insurance from Defendant UNUM and maintained his coverage during all relevant times. Defendant PHS had applied for and obtained a group long term disability insurance policy ("policy" or "plan") provided by Defendant UNUM. The policy provided two classes of coverage. Class 1 coverage was mandatory for employees such as Plaintiff and gave enrollees forty percent of their income in the event of disability. Class 2 coverage was optional and afforded enrollees an additional twenty percent of income protection.

In March 1998 Plaintiff resigned due to a loss of vision resulting from ischemic optic neuropathy. Within ninety days Defendant UNUM began paying disability payments, but in September 1999 Defendant UNUM declared that Plaintiff was no longer disabled and ceased payments. On July 13, 2000 Plaintiff filed suit in New Mexico state court, bringing three counts: breach of contract, fraud in the inducement, and breach of the covenant of good faith and fair dealing.[1] Defendants removed the case and now move to dismiss on preemption grounds.

**II.    Standard**

Defendants' motions for partial dismissal under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for partial summary judgment under Rule 56(c) will be considered as motions for summary judgment. Under the Federal Rules, if a court refers to material extraneous to the parties' pleadings in deciding a Rule 12(b)(6) motion, the motion is converted into a motion for summary judgment. However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). Each Defendant attaches the Policy (or portions of it) and a "summary plan description." Defendant PHS attaches additional documents in support of its statement of undisputed material facts. It may be that reference to the Policy or the Summary Plan Description would not convert what would have been a motion to dismiss into one for summary judgment, because of the attached documents' importance to the complaint,  However,

---

[1] Plaintiff claims that Defendants' failure to provide the benefits promised under Class 2 coverage "is the reason Plaintiff has filed suit." (Pl's Resp. at 2.) The complaint is devoid of reference to the dichotomy between the two classes of coverage.

Defendants' alternative styling of their motions invited Plaintiff to refer to and attach his own extrinsic materials. Accepting the invitation, Plaintiff attached his affidavit to one of his responses. I have considered this affidavit, and therefore treat Defendants' motions as made under Rule 56.

A court should grant summary judgment only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Initially, the moving party carries the burden of establishing that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The burden then shifts to the party opposing the motion, who must come forward with evidence, beyond mere allegations or denials of the pleadings, which shows that a genuine issue of material fact exists. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). In deciding a motion for summary judgment, courts should "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

**III.   Analysis**

ERISA preempts state common law claims which have their factual basis in an employee benefit plan. Shaw v. Delta Air Lines, 463 U.S. 85, 96-97 (1983) (citing ERISA section 514(a) (29 U.S.C. § 1144(a)); Settles v. Golden Rule Ins. Co., 927 F.2d 505, 509 (10th Cir. 1991). Defendant UNUM contends that because each of Plaintiff's three common law claims has its basis in an ERISA-covered employee benefit plan, ERISA preempts each claim. With respect to Plaintiff's fraud in the inducement claim, both Defendants add that even if that claim is not

preempted, Plaintiff has failed to comply with the Rule 9(b) requirement that the averred circumstances constituting fraud be stated with particularity.

Plaintiff responds that a portion of the plan at issue, i.e., the Class 2 coverage, falls within a regulatory "safe harbor" from ERISA coverage found at 29 C.F.R. § 2510.3-1(j). Plaintiff also argues alternatively that even if ERISA governs Class 2 coverage or the whole Policy, a principle discussed in Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985 (10th Cir. 1999) nevertheless prevents ERISA from preempting Plaintiff's fraud in the inducement claim. Plaintiff makes no alternative argument with respect to his breach of contract claim or his breach of the covenant of good faith and fair dealing claim.[2]

**A.    All three claims**

**1.    Class 2 coverage does not qualify for the safe harbor.**

Plaintiff's initial position is that his claims are based on a type of group insurance plan that is expressly exempted from ERISA's coverage and thus not preempted by ERISA. ERISA does not include policies or plans

> under which . . . [p]articipation the program is completely voluntary for employees or members [and] [t]he sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer . . . .

---

[2] Plaintiff does not respond to Defendant UNUM's position that ERISA operates in this case to preempt Plaintiff's breach of contract claim, other than by making his safe harbor argument derived from 29 C.F.R. § 2510.3-1(j). Plaintiff makes a one-sentence response to Defendant UNUM's argument that ERISA preempts Plaintiff's claim that Defendant UNUM breached the covenant of good faith and fair dealing. This response is clearly dependent on the resolution of the safe-harbor determination.

Plaintiff also does not cite Rule 9(b) in response to Defendant PHS' Rule 9(b) argument and does not respond at all to Defendant UNUM's Rule 9(b) argument.

29 C.F.R. § 2510.3-1(j). Defendant UNUM disagrees that the Class 2 coverage falls into this safe harbor. For instance, Defendant UNUM argues that Defendant PHS did far more than simply permit Defendant UNUM to publicize the program and collect premiums. It claims that Defendant PHS is the policyholder and the plan administrator, citing the policy and the summary plan description. (UNUM's Ex. A and B.)[3] Plaintiff, through his own affidavit, agrees that Defendant PHS sponsored the Policy but denies that Defendant PHS administered the policy. (Pl's Ex. 1 ¶ 3, 13.) Elsewhere Plaintiff acknowledges that Defendant PHS is the plan administrator. (Pls. Resp. to PHS at 2.) Plaintiff also claims that he purchased coverage based on "the representations of the Defendant's Agent and brochures." (Pl's Ex. 1 ¶ 3.)

ERISA applies to a plan if the employer endorses or recommends it or aids in its administration. Nechero v. Provident Life & Accident Ins. Co., 795 F. Supp. 374, 380 (D.N.M. 1992). The evidence indicates quite plainly that Defendant PHS administers the plan. To the extent Plaintiff believes otherwise, his own personal belief is insufficient to create a triable issue of fact, especially where it conflicts with policy documents. Cisneros v. Wilson, 226 F.3d 1113, 1130-31 (10th Cir. 2000). Thus, Class 2 coverage does not meet the criteria for safe harbor protection.

Moreover, the safe harbor only applies where the "sole functions" of the employer "are, without endorsing the program," permitting the insurer to publicize, and collecting and remitting premiums. Plaintiff contends that both Defendants made representations that induced him to purchase insurance, i.e., that both Defendants endorsed the policy. Indeed, Defendants' alleged

---

[3] Defendant UNUM also asserts that Defendant PHS selected Defendant UNUM, determined eligibility, and "incorporated the policy terms into the summary plan description." (Reply at 5.) Defendant UNUM has not presented evidence to support these claims.

5

inducements are a key premise of Plaintiff's complaint, which includes a claim for fraud in the inducement. (E.g., Compl. ¶¶ 13, 17). For Plaintiff now to assert that Defendant PHS did no more than permit Defendant UNUM to publicize the policy or collect and remit premiums, without endorsing the policy, is irreconcilably inconsistent.

### 2. Class 2 coverage cannot be severed from Class 1 coverage for safe harbor purposes.

In arguing that Class 2 coverage, in contrast with Class 1 coverage, qualifies for the safe harbor, Plaintiff impermissibly unbundles the policy's components. The plaintiff in Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 463 (10th Cir. 1997) tried the same rejected approach. In Gaylor the plaintiff argued that while her employer paid for some disability coverage which was mandatory, taking it out of the scope of the safe harbor, her additional optional disability coverage was entitled to the safe harbor from ERISA because she paid for it. Gaylor, 112 F.3d at 463. Because the plaintiff's optional coverage was simply one feature of the plan as a whole, another part of which did not qualify for the safe harbor, the whole plan did not qualify for safe harbor protection. Id. (citing Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1345 (11th Cir. 1994)) (finding that "Elect" coverage, which was available only to ERISA-covered "Basic" plan participants, was "part and parcel" of the whole plan and thus did not earn safe harbor protection).

The relationship between the two classes of coverage in this case is quite similar to the those at issue in Gaylor and Glass. Class 1 coverage is mandatory. Therefore, Class 1 coverage

cannot qualify for the safe harbor. 29 C.F.R. § 2510.3(j)(2).[4]  Class 2 coverage was only available to those who first had Class 1 non-safe harbor-type coverage, like in Gaylor and Glass.  Class 2 coverage was merely part and parcel of the whole.  Accordingly, even if Class 2 coverage alone could qualify for the safe harbor, Class 2 coverage cannot be severed from Class 1 coverage.  Because Class 1 coverage does not qualify for the safe harbor, neither does Class 2 coverage or the policy as a whole.

### B.     Fraud in the inducement claim

Plaintiff's alternate position is that even if the safe harbor does not salvage all three of his common law claims, the principles discussed in Woodworker's preserve at least his claim that Defendants fraudulently induced him into purchasing Class 2 coverage.[5]

Defendants offer various reasons why Woodworker's does not apply, as well as other

---

[4] A finding that a plan does not qualify for the safe harbor is not necessarily a finding that ERISA governs the plan. Gaylor, 112 F.3d at 464. A finding that ERISA governs a plan is not necessarily a finding that ERISA preempts a Plaintiff's claims. Id. at 465. However, Defendant UNUM has quite clearly argued that ERISA controls the policy at issue and preempts the claims in this case. Plaintiff's only arguments that ERISA does not preempt his claims are based on the "safe harbor" regulation (only with respect to Class 2 coverage) and Woodworker's. Plaintiff therefore implicitly, but clearly, concedes that (1) ERISA governs Class 1 coverage (2) if his safe harbor and Woodworker's arguments are unpersuasive, then ERISA governs the entire Policy and preempts this case.

[5] Defendant also relies on two cases from outside the Tenth Circuit: Wilson v. Zoellner, 114 F.3d 713 (8th Cir. 1997); Coyne & Delany Co. v. Selman, 98 F.3d 1457 (4th Cir. 1996). Those two cases, like Woodworker's, involved something other than an employee/plaintiff suing after a denial of plan benefits for plan benefits. Wilson, 114 F.3d at 718 (finding that ERISA does not preempt negligent misrepresentation suit by employee against non-fiduciary insurance agent who sold ERISA policy to employer, noting that plaintiff had already sought plan benefits in a separate action); Coyne & Delany Co., 98 F.3d at 1470-71 (finding that ERISA does not preempt claim that insurance professionals negligently failed to provide the coverage for which the employer believed he had contracted). As discussed infra, I find these factual differences to be quite significant and decline to extend the reasoning of Wilson and Coyne & Delany to this case.

reasons why ERISA preempts a claim for fraud in the inducement. Defendants also contend that even if ERISA does not preempt Plaintiff's fraud in the inducement claim, Plaintiff has failed to meet the pleading requirements set forth in Rule 9(b).

### 1. Plaintiff's fraud in the inducement claim does not meet the standard of Rule 9(b).

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To plead a claim of fraud with particularity, a plaintiff must describe the circumstances of the fraud, including the time, place, and content of the false representation, the identity of the person making the representation and the harm caused by reliance on it. Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997).

Plaintiff's complaint fails to comply with Rule 9(b). The complaint does not identify with any particularity the source of the allegedly misleading information. Indeed, Plaintiff nebulously describes the origin of his fraud claim as "a summary of the plan and other sales materials and brochures," as well as unspecified "representations of [Defendants'] agents." (Compl. ¶¶ 14-15.)[6] The Complaint also refers only vaguely to the time and/or place of the alleged misrepresentations. Plaintiff alleges that Defendants perpetrated their fraud "[a]t the time Defendants . . . originally induced Plaintiff individually to enter into the contract of disability insurance." (Compl. ¶ 13.)

### 2. The principle behind Woodworker's does not preserve Plaintiff's fraud in the inducement claim.

---

[6] In apparent response to Defendant PHS' Rule 9(b) argument, Plaintiff quotes liberally from a booklet titled "How Custom Benefits Works." Although that booklet is never identified by name in the complaint, Plaintiff now indicates that it is one, or perhaps the only, source of the allegedly fraudulent representations.

The complaint does contain allegations concerning the consequences of the alleged fraud. Plaintiff complains that Defendants induced him to enter into a contract by representing that they would pay disability benefits and then, because of this fraud, caused damages by denying Plaintiff disability payments. (Compl. ¶¶ 13-14, 16; Pl's Resp. to PHS at 4.). Even if this allegation concerning consequences is sufficiently particular, this is the kind of claim that ERISA preempts.

In <u>Dedeaux v. Pilot Life Ins. Co.</u>, 481 U.S. 41, 43 (1981), the plaintiff's employer had purchased a long term disability policy from the defendant. The plaintiff believed he was disabled but the defendant did not. <u>Id.</u> Plaintiff sued the defendant alleging state causes of action, including fraud in the inducement, for damages stemming from failure to pay his claim. <u>Id.</u> The Supreme Court found that all of the plaintiff's common law causes of action "undoubtedly meet the criteria for pre-emption under" ERISA. <u>Id.</u> at 48.[7] The vehicle for possible remedies was already comprehensively embodied within ERISA. <u>Id.</u> at 52-53 (citing 29 U.S.C. § 1132(a).) At least one Court of Appeals has applied the same logic to an employee's claims of fraud following a refusal to pay benefits. E.g., <u>Butero v. Royal Maccabees Life Ins. Co.</u>, 174 F.3d 1207, 1213 (11th Cir. 1999) ("[W]e have held that claims against an insurer for fraud and fraud in the inducement to purchase a policy are in essence claims to recover benefits due to the beneficiary under the terms of the plan.") (quotations omitted).

While there exists arguably contrary authority, e.g., <u>Smith v. Cohen Benefit Group, Inc.</u>, 851 F. Supp. 210, 213 (M.D.N.C. 1993), I believe that the Tenth Circuit would follow the Supreme Court's language in <u>Dedeaux</u> and conclude that ERISA preempts the common law fraud

---

[7] The Supreme Court also noted that the plaintiff appeared to concede on appeal that ERISA preempted his fraud claim. <u>Dedeaux</u>, 481 U.S. at 48.

9

in the inducement claim in this case. See Wilcott v. Matlack, Inc., 64 F.3d 1458, (10th Cir. 1995) (finding that "to establish defendants' liability [for fraudulent misrepresentation], plaintiff would have to show the reasonableness of his reliance on the alleged misrepresentations regarding disability-leave rights, which would require resort to the terms of the ERISA plan," and that ERISA therefore preempted plaintiff's claim); Milton v. Scrivner, Inc., 53 F.3d 1118, 1121 n. 3 (10th Cir. 1995) (noting that ERISA preemption is deliberately expansive and that ERISA preempts tort and contract claims where the factual basis of a cause of action involves an employee benefit plan, finding that ERISA preempted claim for fraud with the intent to deprive the plaintiff of ERISA benefits); see also Alexander v. Anheuser-Busch Co., 990 F.2d 536, 539 (10th Cir. 1993) (finding that oral or written misrepresentations cannot expand scope of ERISA plan benefits); Moorhead v. The Principal Financial Group, No. 92-290 M, 1993 U.S. Dist. LEXIS 19486, *3 (D.N.M. May 24, 1993) (Mechem, J.) (concluding that the Tenth Circuit regards claims for fraud and misrepresentation as preempted by ERISA, in case in which plaintiff alleged that defendants misrepresented scope of coverage before plaintiff enrolled).

  Woodworker's does not compel a different conclusion. In Woodworker's an employer sued the insurer who eventually provided coverage for the employer's employees. Woodworker's, 170 F.3d at 987-88. The employer claimed that the insurer made allegedly fraudulent representations concerning benefit plan rates leading up to, but before, the formation of the ERISA-covered plan. Id. at 990. In holding that ERISA did not preempt the employer's fraudulent representation claim, the Tenth Circuit first distinguished fraudulent inducement claims such as the one in this case in which a plan beneficiary seeks plan benefits. Id. Then the Tenth Circuit observed that the fraud claim implicated, as Plaintiff argues this case does, "pre-plan"

activity. Id. at 991. The Tenth Circuit remarked that Woodworker's thus did not involve, at the time of the alleged fraud, "principal ERISA entities." Id. The Tenth Circuit also rooted its decision in the lack of effect on, for example, the calculation of benefits. Id. at 992. The dispute in Woodworker's was essentially a garden-variety claim by a buyer of services against a seller, and was thus "quite remote from the area with which ERISA is expressly concerned--reporting, disclosure, fiduciary responsibility and the like." Id. (quotation omitted).

The policy in this case was already in existence when Plaintiff enrolled in Class 2 coverage and Plaintiff was already a Class 1 member. Therefore it is questionable whether the alleged fraud occurred "pre-plan" as that term was used in Woodworker's. However, even if the alleged fraud in this case involves pre-plan activity, the alleged fraud certainly relates to a failure to pay ERISA benefits--an area with which ERISA is expressly concerned. To apply Woodworker's in Plaintiff's favor to the facts of this case would be to permit a state law claim "to recover benefits due" whenever an employee with an ERISA-covered plan believes he is disabled within the plan definition but the plan administrator of fiduciary believes he is not. 29 U.S.C. § 1132(a)(1)(B). ERISA preempts such claims.

## IV.  Conclusion

Since all three of Plaintiff's state law claims are preempted by ERISA, Defendants' motions for summary judgment on those claims must be granted. In the last sentence of his response to Defendant Presbyterian Healthcare Services' motion for summary judgment, Plaintiff stated "Plaintiff prays that Defendant PHS' motion be denied, or in the alternative, that Plaintiff be allowed to file an amended complaint to allege its (sic) ERISA benefits under those portions of the policy which provide for such benefits." In his response to Defendant UNUM Life Insurance

11

Company's motion for summary judgment, Plaintiff made no similar request to amend his complaint.  Plaintiff has not filed a formal motion to amend, which is required by the rules of this Court.  D.N.M.LR-Civ. 7.1, 7.2 and 7.3(a)(1).  Plaintiff's alternative request to amend – thrown into the last sentence of his response to PHS' motion for summary judgment – does not state with particularity the grounds and relief sought, does not state whether the request is opposed, and does not contain a supporting brief, affidavit or other papers related to the request.  Under the circumstances, the request is not properly presented and will not be allowed in this case, although Plaintiff may file a separate action seeking ERISA benefits under PHS' plan, if Plaintiff can do that consistent with FED. R. CIV. P. 11.

IT IS THEREFORE ORDERED THAT Defendants' motions (Doc. Nos. 20 and 23), which have been treated as motions for summary judgment, are granted.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**